# BARNES v. UNITED STATES

No. 72–5443.  Argued March 20, 1973—Decided June 18, 1973

POWELL, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, WHITE, BLACKMUN, and REHNQUIST, JJ., joined. DOUGLAS, J., filed a dissenting opinion, *post*, p. 848. BRENNAN, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post*, p. 852.

*Malcolm H. Mackey*, by appointment of the Court, 411 U. S. 946, argued the cause and filed a brief for petitioner.

*Deputy Solicitor General Friedman* argued the cause for the United States. With him on the brief were *Solicitor General Griswold, Assistant Attorney General Petersen, Mark L. Evans, and Sidney M. Glazer.*

MR. JUSTICE POWELL delivered the opinion of the Court.

Petitioner Barnes was convicted in United States District Court on two counts of possessing United States Treasury checks stolen from the mails, knowing them to be stolen, two counts of forging the checks, and two counts of uttering the checks, knowing the endorsements to be forged. The trial court instructed the jury that ordinarily it would be justified in inferring from unexplained possession of recently stolen mail that the defendant possessed the mail with knowledge that it was stolen. We granted certiorari to consider whether this instruction comports with due process. 409 U. S. 1037 (1972).

The evidence at petitioner's trial established that on June 2, 1971, he opened a checking account using the pseudonym "Clarence Smith." On July 1, and July 3, 1971, the United States Disbursing Office at San Francisco mailed four Government checks in the amounts of

$269.02, $154.70, $184, and $268.80 to Nettie Lewis, Albert Young, Arthur Salazar, and Mary Hernandez, respectively. On July 8, 1971, petitioner deposited these four checks into the "Smith" account. Each check bore the apparent endorsement of the payee and a second endorsement by "Clarence Smith."

At petitioner's trial the four payees testified that they had never received, endorsed, or authorized endorsement of the checks. A Government handwriting expert testified that petitioner had made the "Clarence Smith" endorsement on all four checks and that he had signed the payees' names on the Lewis and Hernandez checks.[1] Although petitioner did not take the stand, a postal inspector testified to certain statements made by petitioner at a post-arrest interview. Petitioner explained to the inspector that he received the checks in question from people who sold furniture for him door to door and that the checks had been signed in the payees' names when he received them. Petitioner further stated that he could not name or identify any of the salespeople. Nor could he substantiate the existence of any furniture orders because the salespeople allegedly wrote their orders on scratch paper that had not been retained. Petitioner admitted that he executed the Clarence Smith endorsements and deposited the checks but denied making the payees' endorsements.[2]

The District Court instructed the jury that "[p]ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light

---

[1] The witness' findings with respect to the Young and Salazar signatures were inconclusive.

[2] This explanation of petitioner's possession of the checks, presented through the postal inspector's testimony, was adopted by petitioner's counsel in argument to the jury. Tr. 107–108.

of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen." [3]

The jury brought in guilty verdicts on all six counts, and the District Court sentenced petitioner to concurrent three-year prison terms. The Court of Appeals for

---

[3] The full instruction on the inference arising from possession of stolen property stated:

"Possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

"However, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from the possession of recently stolen property.

"The term 'recently' is a relative term, and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property, and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft the more doubtful becomes the inference which may reasonably be drawn from unexplained possession.

"If you should find beyond a reasonable doubt from the evidence in the case that the mail described in the indictment was stolen, and that while recently stolen the contents of said mail here, the four United States Treasury checks, were in the possession of the defendant you would ordinarily be justified in drawing from those facts the inference that the contents were possessed by the accused with knowledge that it was stolen property, unless such possession is explained by facts and circumstances in this case which are in some way consistent with the defendant's innocence.

"In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise of constitutional rights the accused need not take the witness stand and testify.

"Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused." Tr. 123–124.

the Ninth Circuit affirmed, finding no lack of "rational connection" between unexplained possession of recently stolen property and knowledge that the property was stolen. 466 F. 2d 1361 (1972). Because petitioner received identical concurrent sentences on all six counts, the court declined to consider his challenges to conviction on the forgery and uttering counts. We affirm.

## I

We begin our consideration of the challenged jury instruction with a review of four recent decisions which have considered the validity under the Due Process Clause of criminal law presumptions and inferences. *Turner* v. *United States,* 396 U. S. 398 (1970); *Leary* v. *United States,* 395 U. S. 6 (1969); *United States* v. *Romano,* 382 U. S. 136 (1965); *United States* v. *Gainey,* 380 U. S. 63 (1965).

In *United States* v. *Gainey, supra,* the Court sustained the constitutionality of an instruction tracking a statute which authorized the jury to infer from defendant's unexplained presence at an illegal still that he was carrying on "the business of a distiller or rectifier without having given bond as required by law." Relying on the holding of *Tot* v. *United States,* 319 U. S. 463, 467 (1943), that there must be a "rational connection between the fact proved and the ultimate fact presumed," the Court upheld the inference on the basis of the comprehensive nature of the "carrying on" offense and the common knowledge that illegal stills are secluded, secret operations. The following Term the Court determined, however, that presence at an illegal still could not support the inference that the defendant was in possession, custody, or control of the still, a narrower offense. "Presence is relevant and admissible evidence in a trial on a possession charge; but absent some showing of the defendant's function at the still, its connection with possession is too tenuous to

permit a reasonable inference of guilt—'the inference of the one from proof of the other is arbitrary . . . .' *Tot* v. *United States,* 319 U. S. 463, 467." *United States* v. *Romano, supra,* at 141.

Three and one-half years after *Romano,* the Court in *Leary* v. *United States, supra,* considered a challenge to a statutory inference that possession of marihuana, unless satisfactorily explained, was sufficient to prove that the defendant knew that the marihuana had been illegally imported into the United States. The Court concluded that in view of the significant possibility that any given marihuana was domestically grown and the improbability that a marihuana user would know whether his marihuana was of domestic or imported origin, the inference did not meet the standards set by *Tot, Gainey,* and *Romano.* Referring to these three cases, the *Leary* Court stated that an inference is " 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U. S., at 36. In a footnote the Court stated that since the challenged inference failed to satisfy the more-likely-than-not standard, it did not have to "reach the question whether a criminal presumption which passes muster when so judged must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use." *Id.,* at 36 n. 64.

Finally, in *Turner* v. *United States, supra,* decided the year following *Leary,* the Court considered the constitutionality of instructing the jury that it may infer from possession of heroin and cocaine that the defendant knew these drugs had been illegally imported.[4] The Court

---

[4] The *Turner* Court also considered the validity of inferring that a defendant knowingly purchased, sold, dispensed, or distributed a

noted that *Leary* reserved the question of whether the more-likely-than-not or the reasonable-doubt standard controlled in criminal cases, but it likewise found no need to resolve that question. It held that the inference with regard to heroin was valid judged by either standard. 396 U. S., at 416. With regard to cocaine, the inference failed to satisfy even the more-likely-than-not standard. *Id.*, at 419.

The teaching of the foregoing cases is not altogether clear. To the extent that the "rational connection," "more likely than not," and "reasonable doubt" standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance. What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process.

In the present case we deal with a traditional common-law inference deeply rooted in our law. For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods. James Thayer, writing in his Preliminary Treatise on Evidence (1898), cited this inference as the descendant of a presumption "running

narcotic drug not in or from the original package bearing tax stamps from the fact that the drugs had no tax stamps when found in the defendant's possession. 26 U. S. C. § 4704 (a) (1964 ed.). The Court upheld the inference that a defendant possessing unstamped heroin knowingly purchased it in violation of the statute, but struck down the inference with regard to cocaine. 396 U. S., 398, 419–424.

through a dozen centuries." [5]   *Id.*, at 327.   Early American cases consistently upheld instructions permitting conviction upon such an inference,[6] and the courts of appeals on numerous occasions have approved instructions essentially identical to the instruction given in this case.[7] This longstanding and consistent judicial approval of the instruction, reflecting accumulated common experience, provides strong indication that the instruction comports with due process.

This impressive historical basis, however, is not in itself sufficient to establish the instruction's constitutionality. Common-law inferences, like their statutory counterparts, must satisfy due process standards in light of

---

[5] Thayer also described the historical development of the presumption:

"[T]he laws of Ine [King of Wessex, A. D. 688–725] provide that, 'if stolen property be attached with a chapman, and he have not brought it before good witnesses, let him prove . . . that he was neither privy (to the theft) nor thief; or pay as *wite* (fine) xxxvi shillings.'   To be found thus in the possession of stolen goods was a serious thing; if they were recently stolen, then was one 'taken with the mainour,'—a state of things that formerly might involve immediate punishment, without a trial; and, later, a trial without a formal accusation; and, later still, a presumption of guilt which, in the absence of contrary evidence, justified a verdict, and at the present time is vanishing away into the mere judicial recognition of a permissible inference . . . ." *Id.*, at 328.   (Citations omitted.)

[6] See, *e. g., Wilson* v. *United States,* 162 U. S. 613 (1896); *Commonwealth* v. *Millard,* 1 Mass. 6 (1804); *Knickerbocker* v. *People,* 43 N. Y. 177 (1870); *State* v. *Raymond,* 46 Conn. 345 (1878); *Cook* v. *State,* 84 Tenn. 461 (1886).

[7] *E. g., United States* v. *Russo,* 413 F. 2d 432 (CA2 1969); *United States* v. *Smith,* 446 F. 2d 200 (CA4 1971); *United States* v. *Winbush,* 428 F. 2d 357 (CA6), cert. denied, 400 U. S. 918 (1970); *United States* v. *Hood,* 422 F. 2d 737 (CA7), cert. denied, 400 U. S. 820 (1970); *United States* v. *Dilella,* 354 F. 2d 584 (CA7 1965).

present-day experience.[8]   In the present case the challenged instruction only permitted the inference of guilt from *unexplained* possession of recently stolen property.[9] The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence.   On the basis of this evidence alone common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen.   Cf. *Turner* v. *United States,* 396 U. S., at 417;[10] *Leary* v. *United States,* 395 U. S., at 46.   Such evidence was clearly sufficient to enable the jury to find beyond a reasonable doubt that petitioner knew the checks were

---

[8] The reasoning of the statutory-inference cases is applicable to analysis of common-law inferences. Cf. *United States* v. *Gainey,* 380 U. S. 63, 70 (1965); Rules of Evidence for United States Courts and Magistrates (proposed Nov. 20, 1972), Rule 303 (a), 56 F. R. D. 212.   Common-law inferences, however, present fewer constitutional problems.   Such inferences are invoked only in the discretion of the trial judge.   While statutes creating criminal law inferences may be interpreted also to preserve the trial court's traditional discretion in determining whether there is sufficient evidence to go to the jury and in charging the jury, *Turner* v. *United States,* 396 U. S. 398, 406 n. 6 (1970); *United States* v. *Gainey, supra,* at 68–70, such discretion is inherent in the use of common-law inferences.

[9] Of course, the mere fact that there is some evidence tending to explain a defendant's possession consistent with innocence does not bar instructing the jury on the inference.   The jury must weigh the explanation to determine whether it is "satisfactory."   *Supra,* at 840 n. 3.   The jury is not bound to accept or believe any particular explanation any more than it is bound to accept the correctness of the inference.   But the burden of proving beyond a reasonable doubt that the defendant did have knowledge that the property was stolen, an essential element of the crime, remains on the Government.

[10] " 'Common sense' . . . tells us that those who traffic in heroin will inevitably become aware that the product they deal in is smuggled, unless they practice a studied ignorance to which they are not entitled."

stolen. Since the inference thus satisfies the reasonable-doubt standard, the most stringent standard the Court has applied in judging permissive criminal law inferences, we conclude that it satisfies the requirements of due process.[11]

## II

Petitioner also argues that the permissive inference in question infringes his privilege against self-incrimination. The Court has twice rejected this argument,[12] *Turner* v. *United States,* 396 U. S., at 417–418; *Yee Hem* v. *United States,* 268 U. S. 178, 185 (1925), and we find no reason to re-examine the issue at length. The trial court specifically instructed the jury that petitioner had a constitutional right not to take the witness stand and that possession could be satisfactorily explained by

---

[11] It is true that the practical effect of instructing the jury on the inference arising from unexplained possession of recently stolen property is to shift the burden of going forward with evidence to the defendant. If the Government proves possession and nothing more, this evidence remains unexplained unless the defendant introduces evidence, since ordinarily the Government's evidence will not provide an explanation of his possession consistent with innocence. In *Tot* v. *United States,* 319 U. S. 463 (1943), the Court stated that the burden of going forward may not be freely shifted to the defendant. See also *Leary* v. *United States,* 395 U. S. 6, 44–45 (1969). *Tot* held, however, that where there is a "rational connection" between the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant. Where an inference satisfies the reasonable-doubt standard, as in the present case, there will certainly be a rational connection between the fact presumed or inferred (in this case, knowledge) and the facts the Government must prove in order to shift the burden of going forward (possession of recently stolen property).

We do not decide today whether a judge-formulated inference of less antiquity or authority may properly be emphasized by a jury instruction.

[12] Nor can the instruction "be fairly understood as a comment on the petitioner's failure to testify." *United States* v. *Gainey,* 380 U. S., at 70–71.

evidence independent of petitioner's testimony. Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination. *Yee Hem* v. *United States, supra,* at 185.

## III

Petitioner further challenges his conviction on the ground that there was insufficient evidence that he knew the checks were stolen *from the mails.* He contends that 18 U. S. C. § 1708 [13] requires knowledge not only that the checks were stolen, but specifically that they were stolen from the mails. The legislative history of the statute conclusively refutes this argument [14] and the courts of appeals that have addressed the issue have uniformly interpreted the statute to require only knowledge that the property was stolen. [15]

---

[13] "Whoever . . . unlawfully has in his possession, any . . . mail . . . which has been so stolen . . . , knowing the same to have been stolen, . . . [shall be fined or imprisoned or both]."

[14] Prior to 1939 the statute required proof of possession of articles stolen from the mail "knowing the same to have been *so* stolen." 18 U. S. C. § 317 (1934 ed.) (emphasis added). See, *e. g., Brandenburg* v. *United States,* 78 F. 2d 811 (CA3 1935). In 1939 Congress eliminated the word "so" preceding the word "stolen." H. R. Rep. No. 734, 76th Cong., 1st Sess., 1 (1939), explains the change: "The reported bill amends the existing law so that it will sustain a conviction for the Government to prove that the property was in fact stolen from the mails and that the defendant knew the property he received had been stolen. The committee feel that this should be sufficient without requiring the Government to prove also that the defendant knew the property received had been stolen from the mails."

See also S. Rep. No. 864, 76th Cong., 1st Sess (1939).

[15] *United States* v. *Hines,* 256 F. 2d 561 (CA2 1958); *Smith* v. *United States,* 343 F. 2d 539 (CA5), cert. denied, 382 U. S. 861

Since we find that the statute was correctly interpreted and that the trial court's instructions on the inference to be drawn from unexplained possession of stolen property were fully consistent with petitioner's constitutional rights, it is unnecessary to consider petitioner's challenges to his conviction on the forging and uttering counts.[16]

*Affirmed.*

MR. JUSTICE DOUGLAS, dissenting.

Possession of stolen property is traditionally under our federal system a local law question. It becomes a federal concern in the present case only if the "mail" was implicated. The indictment, insofar as the unlawful possession counts are concerned, charges that the items had been *"stolen from the mail."* While there was evidence that these items had gone through the mail, petitioner did not take the stand, nor was there any evidence that petitioner knew that the items had been "stolen from the mail." As to the possession counts in the indictment the District Court charged the jury that "three essential elements" were required to prove the possession offenses:

> "FIRST: The act or acts of unlawfully having in one's possession the contents of a letter, namely, the United States Treasury checks as alleged;
>
> "SECOND: That the contents of the letter,

(1965); *United States* v. *Gardner,* 454 F. 2d 534 (CA9), cert. denied, 409 U. S. 867 (1972); *United States* v. *Schultz,* 462 F. 2d 622 (CA9 1972).

[16] Although affirmance of petitioner's conviction on two of the six counts carrying identical concurrent sentences does not moot the issues he raises pertaining to the remaining counts, *Benton* v. *Maryland,* 395 U. S. 784 (1969), we decline as a discretionary matter to reach these issues. Cf. *United States* v. *Romano,* 382 U. S. 136, 138 (1965).

namely, the United States Treasury checks as alleged, were stolen from the mail; and

"THIRD: That the defendant James Edward Barnes knew the contents had been stolen."

The District Court also charged the jury:

"If you should find beyond a reasonable doubt from the evidence in the case that the mail described in the indictment was stolen, and that while recently stolen the contents of said mail here, the four United States Treasury checks, were in the possession of the defendant you would ordinarily be justified in drawing from those facts the inference that the contents were possessed by the accused with knowledge that it was stolen property, unless such possession is explained by facts and circumstances in this case which are in some way consistent with the defendant's."

As noted by the Court, the Act, which originally required proof of possession of articles stolen from the mail "knowing the same to have been so stolen," 18 U. S. C. § 317 (1934 ed.), was changed by eliminating the word "so" before "stolen." H. R. Rep. No. 734, 76th Cong., 1st Sess., 1. And the Act under which petitioner was charged and convicted does not require as an ingredient of the offense that petitioner knew the property had been stolen from the mails.

That, however, is the beginning, not the end of the problem. For without a nexus with the "mails" there is no federal offense. How can we rationally say that "possession" of a stolen check allows a judge or jury to conclude that the accused knew the check was *stolen from the mails?* We held in *Tot* v. *United States,* 319 U. S. 463, that where a federal Act made it unlawful for any convicted person to possess a firearm that had

been shipped in interstate or foreign commerce, it was unconstitutional to presume that a firearm possessed by such person had been received in interstate or foreign commerce.[1]  The decision was unanimous.  The vice in *Tot* was that the burden is on the government in a criminal case to prove guilt beyond a reasonable doubt and that use of the presumption shifts that burden.  We said: "[I]t is not permissible thus to shift the burden by arbitrarily making one fact, which has no relevance to guilt of the offense, the occasion of casting on the defendant the obligation of exculpation." *Id.,* at 469. The use of presumptions and inferences to prove an element of the crime is indeed treacherous, for it allows men to go to jail without any evidence on one essential ingredient of the offense.  It thus implicates the integrity of the judicial system.  We held in *In re Winship,* 397 U. S. 358, 364, that the Due Process Clause requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . ."  Some evidence of wrongdoing is basic and essential in the judicial system, unless the way of prosecutors be made easy by dispensing with the requirement of presumption of innocence, which is the effect of what the Court does today.  In practical effect the use of these presumptions often means that the great barriers to the protection of procedural due process contained in the Bill of Rights are subtly diluted.[2]

May Congress constitutionally enact a law that says

---

[1] *Tot* v. *United States* was decided in 1943, four years after the passage by Congress of the 1939 amendment to the present Act eliminating the need to prove knowledge that the property had been stolen from the mails.  Had *Tot* been decided before 1939 it is inconceivable that Congress would have made the 1939 change in the present Act.

[2] Mr. Justice Black and I previously have voiced this concern. *Turner* v. *United States,* 396 U. S. 398, 425 (dissenting opinion); *United States* v. *Gainey,* 380 U. S. 63, 72, 74 (dissenting opinions).

juries can convict a defendant without any evidence at all from which an inference of guilt could be drawn? If *Thompson* v. *Louisville,* 362 U. S. 199, means anything, the answer is in the negative. The Congress is as unwarranted in telling courts what evidence is enough to convict an accused as we would be to tell Congress what criminal laws should be enacted. That seems inescapably plain by the regime of separation of powers under which we live.

In *Leary* v. *United States,* 395 U. S. 6, we held that it was constitutionally impermissible to presume that one who possessed marihuana would be presumed to know of its unlawful importation. We said it would be sheer "speculation" to conclude that even a majority of the users of the plant knew the source of it. *Id.,* at 53. The overall test, we said, was whether it can be said "with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." *Id.,* at 36.

In that case there were some statistics as to the quantity of marihuana grown here and the amount grown abroad that enters the country. There was evidence of the characteristics of local and foreign marihuana, and the like.

Stolen checks may be the product of local burglaries of private homes or offices.

Stolen checks may come from purses snatched or purloined.

Stolen checks may involve any one of numerous artifices or tricks.

In other words, there are various sources of stolen checks which in no way implicate federal jurisdiction.

Checks stolen from national banks, checks stolen from federal agencies, checks lifted from the mails are other sources.

But, unlike *Leary*, we have no evidence whatsoever showing what amount of stolen property, let alone stolen checks, *implicates the mails*. Without some evidence or statistics of that nature we have no way of assessing the likelihood that this petitioner knew that these checks were *stolen from the mails*. We can take judicial notice that checks are stolen from the mails. But it would take a large degree of assumed omniscience to say with "substantial assurance" that this petitioner more likely than not knew from the realities of the underworld that this stolen property came *from the mails*. But without evidence of that knowledge there would be no federal offense of the kind charged.

The step we take today will be applauded by prosecutors, as it makes their way easy. But the Bill of Rights was designed to make the job of the prosecutor difficult. There is a presumption of innocence. Proof beyond a reasonable doubt is necessary. The jury, not the court, is the factfinder. These basic principles make the use of these easy presumptions dangerous.[3] What we do today is, I think, extremely disrespectful of the constitutional regime that controls the dispensation of criminal justice.

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

Petitioner was charged in two counts of a six-count indictment with possession of United States Treasury

---

[3] What we said in *Christoffel* v. *United States*, 338 U. S. 84, 89, that "all the elements of the crime charged shall be proved beyond a reasonable doubt" has been the guiding rule at least on the issue of guilt. And it is cogently argued that presumptions of the existence of elements of a crime have no place in our constitutional framework. See 22 Stan. L. Rev. 341 (1970). That seems indubitably true to me, at least in the present case where knowledge that the checks were stolen from the mails has only suspicion to support it.

checks stolen from the mails, knowing them to be stolen. The essential elements of such an offense are (1) that the defendant was in possession of the checks, (2) that the checks were stolen from the mails, and (3) that the defendant knew that the checks were stolen. The Government proved that petitioner had been in possession of the checks and that the checks had been stolen from the mails; and, in addition, the Government introduced some evidence intended to show that petitioner knew or should have known that the checks were stolen. But rather than leaving the jury to determine the element of "knowledge" on the basis of that evidence, the trial court instructed it that it was free to infer the essential element of "knowledge" from petitioner's unexplained possession of the checks. In my view, that instruction violated the Due Process Clause of the Fifth Amendment because it permitted the jury to convict even though the actual evidence bearing on "knowledge" may have been insufficient to establish guilt beyond a reasonable doubt. I therefore dissent.

We held in *In re Winship,* 397 U. S. 358, 364 (1970), that the Due Process Clause requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . ." Thus, in *Turner* v. *United States,* 396 U. S. 398, 417 (1970), we approved the inference of "knowledge" from the fact of possessing smuggled heroin because " '[c]ommon sense' . . . tells us that those who traffic in heroin will *inevitably* become aware that the product they deal in is smuggled . . . ." (Emphasis added.) The basis of that "common sense" judgment was, of course, the indisputable fact that all or virtually all heroin in this country is necessarily smuggled. Here, however, it cannot be said that all or virtually all endorsed United States Treasury checks have been stolen. Indeed, it is neither unlawful nor unusual

for people to use such checks as direct payment for goods and services. Thus, unlike *Turner,* "common sense" simply will not permit the inference that the possessor of stolen Treasury checks *"inevitably"* knew that the checks were stolen. Cf. *Leary* v. *United States,* 395 U. S. 6 (1969).

In short, the practical effect of the challenged instruction was to permit the jury to convict petitioner even if it found insufficient or disbelieved all of the Government's evidence bearing directly on the issue of "knowledge." By authorizing the jury to rely exclusively on the inference in determining the element of "knowledge," the instruction relieved the Government of the burden of proving that element beyond a reasonable doubt. The instruction thereby violated the principle of *Winship* that every essential element of the crime must be proved beyond a reasonable doubt.