UNITED STATES of America,
Plaintiff-Appellee,

v.

Alvin Eugene CASTELL,
Defendant-Appellant.

No. 78–5339
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 15, 1978.

John A. Nuckolls, Atlanta, Ga., for defendant-appellant.

William L. Harper, U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

COLEMAN, Circuit Judge.

Castell appeals his conviction of the following offenses: (1) possession of 470 boxes of frozen meat which were in an interstate shipment (18 U.S.C. § 659); (2) interstate transportation of a stolen Kenworth tractor

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

(18 U.S.C. § 2312); (3) interstate transportation of a stolen Freuhauf trailer (18 U.S.C. § 2314). He claims he did not get a fair trial because the trial court excluded certain evidence and gave the jury a prejudicial instruction. We find these contentions to be without merit and affirm the conviction.

An initial trial which began on January 16, 1978, ended in a mistrial when the jury was unable to reach a verdict. The case was set for retrial on February 13, 1978, and was transferred from Gainesville, Georgia, to Atlanta because renovation of the Gainesville Courthouse had begun and this transfer would allow for a speedier retrial. Appellant was convicted on all three counts February 15, 1978. On March 24, 1978, he was sentenced to six years in prison on Count 1, five years on Count 2, and ten years on Count 3. The execution of the sentences imposed on Counts 2 and 3 was suspended, and appellant was placed on probation for a period of five years to commence upon the expiration of the six year sentence imposed in Count 1.

The case against appellant was based on the testimony of Charles Floyd,[1] a truck driver for Commodity Transport Services in North Carolina. We must view the facts in light most favorable to the verdict. According to Floyd's testimony the crime was instigated by Castell who approached Floyd and suggested they steal a load of frozen meat which Floyd was to pick up in Amarillo, Texas, and transport to Salisbury, North Carolina, pursuant to a trip lease with Refrigerated Transport Company. Floyd agreed to go along with the proposal, and they drove back east together. When they reached Lebanon, Tennessee, Floyd left the truck to sleep in a motel while Castell remained in the truck with extra keys given to him by Floyd. Following the plan they had devised, shortly after Floyd registered for the night, Castell drove off with the tractor, trailer, and frozen meat.

The next morning Floyd reported the rig as stolen. An agent of Refrigerated Transport Company, Frank Argenbright, talked to Floyd about the theft that day, and Floyd finally told him the truth about the theft scheme. The tractor, trailer, and frozen meat were located by the F.B.I. the next day on the premises of appellant Castell in Toccoa, Georgia.

Castell insisted at trial that he did not have possession of the tractor, trailer, and frozen meat as a result of a plan to steal and sell them. He explained that he was trying to get home early from Texas, and Floyd gave him a ride. When Floyd decided to spend the night in Tennessee with a lady friend, he allowed Castell to drive on home to Toccoa with the rig so that he could attend to family business. He testified that Floyd was to get a ride to Toccoa the next day and pick up the load.

At the first trial of the case appellant was allowed to introduce evidence concerning two girls who were with Floyd in Texas and during part of the trip from Texas to Tennessee. The defense also offered evidence concerning drinking and partying on the part of Floyd and the girls while they were in Texas.[2] This trial ended in a hung jury.

At the second trial the judge held a hearing on this matter. After determining that the activities in question had nothing to do with the offenses charged and that the girls were not present when the theft was discussed, the judge excluded this evidence as irrelevant. With the "women testimony" excluded, the jury chose to believe Floyd's story instead of Castell and convicted him on all counts.

Appellant argues that the evidence concerning Floyd's drinking and the two women who were with him for part of the trip was relevant to Floyd's credibility as a witness. He also contends that the presence of other witnesses during the alleged conspiratorial conduct was relevant to show the implausibility of the events testified to by Floyd.

1. Floyd was separately indicted, pleaded guilty to the charges, and testified in return for expected leniency in sentencing.

2. Since no one could identify the girls, subpoenaing them to testify was impossible.

First of all, there is no indication in the record that the two women were ever in the presence of appellant and Floyd when the theft scheme was discussed. If it is argued that the Texas conduct buttressed the likelihood that Floyd would do likewise in Lebanon, it is hardly likely that Floyd would expose his activities by falsely accusing Castell with running away with the truck. All he had to do in such an event would be to go on to Georgia as planned, picking up his truck in Toccoa.

Second, District Judge William C. O'Kelley held a full hearing on this matter before the trial began. Additionally, he had presided at the initial trial. Therefore, he was in a particularly good position to decide the relevancy of this evidence. We have always upheld the wide discretion of the trial judge in determinations of relevancy and materiality of evidence, and we have overturned such rulings only upon a clear showing of an abuse of discretion. *United States v. Grimm,* 5 Cir. 1978, 568 F.2d 1136, 1138. *See also United States v. McDaniel,* 5 Cir. 1978, 574 F.2d 1224, 1227; *United States v. Ashley,* 5 Cir. 1977, 555 F.2d 462, 465, *cert. denied,* 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147; *United States v. Bryant,* 5 Cir. 1974, 490 F.2d 1372, *cert. denied sub nom., Impson v. United States,* 419 U.S. 832, 95 S.Ct. 57, 42 L.Ed.2d 58 (1974), *rehearing en banc denied,* 493 F.2d 664 (5th Cir. 1974); *United States v. Allison,* 5 Cir. 1973, 474 F.2d 286, 288–9. Clearly, there was no abuse of discretion on the part of Judge O'Kelley in this case.

■ "The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged." *United States v. Turquitt,* 5 Cir. 1977, 557 F.2d 464, 468. When the trial judge determines that the proffered evidence presents a danger of confusing the issues or misleading the jury and this danger outweighs its probative value, he should exclude the evidence. *United States v. Tidwell,* 5 Cir. 1977, 559 F.2d 262,

267; *United States v. Johnson,* 5 Cir. 1977, 558 F.2d 744, 746–7. The jury in this case could easily have been confused and misled by the evidence concerning witness Floyd's partying habits which had so little bearing on the real issue of the case. Such evidence shows nothing about his intention (or that of anyone else) to steal an interstate shipment.[3] The exclusion of this evidence was not reversible error.

■ Appellant also cites as reversible error the following jury instruction:

Now, possession of property recently stolen, if not satisfactorily explained, is a circumstance from which the jury may reasonably draw the inference and find that the person in possession knew the property had been stolen. The same inference may be reasonably drawn from a false explanation of such possession.

He contends that the repeated use of the word "stolen" in this instruction prejudged the main issue in the case and that the inference authorized by this instruction failed under the test of *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) and *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Appellant acknowledges that *Barnes* approves an instruction which permits an inference of knowledge from the act of possessing *concededly* stolen property, but he emphasizes that the inference instruction can only be used if both sides agree that somebody actually stole the property. Therefore, appellant says the instruction was inappropriate here because he never conceded that the property was stolen. He bases this argument on the reasoning in *United States v. Cameron,* 5 Cir. 1972, 460 F.2d 1394, a decision which preceded the *Barnes* decision by one year and which was subsequently implicitly overruled in *United States v. Roberts,* 5 Cir. 1973, 483 F.2d 226, 228. We find no merit to the argument.

---

**3.** Judge O'Kelley commented at the hearing in the second trial, ". . . you would have thought we were trying either a drunken driving case or an interstate transportation of women for immoral purposes rather than what we were trying, if you had listened to the evidence in the courtroom." (Record, Vol. 2, p. 159).

The government introduced sufficient evidence at the trial for the jury to determine that the goods were in fact stolen. The owners of the goods testified that Castell did not have the authority to drive the rig. Floyd testified that he and Castell agreed together to steal the shipment and that in fact Castell did drive the shipment away from the truck stop in Lebanon, Tennessee. The only evidence the defense introduced to refute this evidence was appellant Castell's denial that he stole the rig and his explanation for possessing· the rig. "[T]he mere fact that there is some evidence tending to explain a defendant's possession consistent with innocence does not bar instructing the jury on the inference. The jury must weigh the explanation to determine whether it is 'satisfactory.'" *Barnes v. United States*, 412 U.S. at 845 n. 9, 93 S.Ct. at 2362. Apparently this jury was persuaded by the government's evidence beyond a reasonable doubt that the goods were stolen, and then they applied the inference instruction to find that appellant Castell was guilty of the theft.[4] As we said in *United States v. Fairchild*, 5 Cir. 1975, 505 F.2d 1378, "a defendant's explanation of his possession of recently stolen goods does not necessarily overcome [the] permissible inference of guilty knowledge. . . . because the jurors are entitled to judge the credibility of the defendant's explanation and assign to the evidence whatever weight they feel it deserves." 505 F.2d at 1381; *see also, United States v. Smith*, 5 Cir. 1974, 502 F.2d 1250.

AFFIRMED.

[4.] When outlining the elements of each offense charged, the District Judge carefully instructed the jury that the Government must prove that the goods had been stolen *and* that defendant *knew* that they were stolen. For example, regarding count one of the indictment, the District Judge stated that:

the elements of the offense charged would be, first, that the defendant did possess or have in his possession certain goods as alleged in count one of the indictment, that is the frozen meat; secondly, that those goods had been stolen from an interstate shipment, as alleged in the indictment; and, third, that the defendant at the time knew that the same, that is, the meat, had been stolen.

Moreover, after giving the charge appellant complains of here, the Judge further cautioned the jury that

[i]f any possession the accused may have had of stolen property is consistent with innocence, the jury should then of course acquit the accused; however, if you find that the defendant knowingly and willfully transported stolen property in interstate commerce knowing it to have been stolen, then the offense would be complete as to counts two and three.