IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 19, 2001

## STATE OF TENNESSEE v. ANNETTA BELL

**Appeal from the Circuit Court for Williamson County**
**No. I-13-100      Donald P. Harris, Judge**

---

### No. M2001-00771–CCA-R3-CD - Filed February 15, 2002

---

The defendant, Annetta Bell, was convicted after a bench trial of theft of property having a value less than $500.00. The trial court imposed a sentence of 11 months and 29 days. All but six months was suspended. In this appeal as of right, the defendant contends that the evidence was insufficient to support her conviction.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

James O. Martin, III (on appeal), and George J. Duzane (at trial), Nashville, Tennessee, for the appellant, Annetta Bell.

Paul G. Summers, Attorney General & Reporter; Elizabeth B. Marney, Assistant Attorney General; and Sharon Guffey, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At approximately 8:00 P.M. October 14, 1999, Tokeisha Morton, the manager on duty at the Lady Foot Locker store located at the Cool Springs Galleria Mall in Williamson County, observed the defendant enter her store carrying a Dillard's shopping bag. While Ms. Morton waited on another customer at the cash register, she observed the defendant pick up one jacket with her right hand while she took a second jacket, a Navy blue and yellow windbreaker with a retail value of $65.00 and on sale for $39.99, with her left hand. She suspected that the defendant placed the second jacket in her Dillard's bag. According to Ms. Morton, the defendant then selected a tee shirt, paid for it, and left the store. Ms. Morton then called mall security and provided a description of the defendant. Shortly thereafter, security returned the call, informing Ms. Morton that they had found the defendant at Finish Line, another store in the mall.

Ms. Morton, accompanied by Lt. Debbie James of the Cool Springs Galleria security detail, confronted the defendant and asked to look in her bag. The defendant said, "Why? I don't have to steal anything. We can go back to the store." She then opened and closed the bag very quickly. Ms. Morton observed the missing jacket. The defendant initially walked in the direction of the Lady Foot Locker and then, according to Ms. Morton, "[took] off in the opposite [direction] and head[ed] closer to Proffitt's." As the defendant walked toward the steps, she called, "Let's go, let's go," to three children, estimated to be between 10 and 12 years of age, who were with her. According to Ms. Morton, the defendant ran out the lower level of Proffitt's.

The three children stayed behind with Ms. Morton and mall security as the defendant fled. Ms. Morton did not immediately follow the defendant. Because it was nearing closing time for the mall, they walked outside expecting the defendant to return for the children. Ms. Morton saw the defendant in the passenger's seat of a white Acura. Someone else was driving the vehicle. The police pursued the vehicle "up a hill and all the way round the mall" before the stop could be accomplished.

Security cameras were located throughout the mall. A video tape showing the confrontation Ms. Morton and Lt. James had with the defendant was shown to the jury.

Troy Word, age 13 at the time of trial, was a defense witness. He testified that he went to the mall with his cousin Anthony, the defendant, and the defendant's son Michael. He recalled that he and his two friends had separated from the defendant just before she entered the Lady Foot Locker but had reconvened just before Ms. Morton approached the defendant. He testified that the defendant opened the bag when requested to do so by Ms. Morton and said, "I ain't got to steal," before walking quickly away. Word testified that he was unable to see what was inside the bag.

Michael Bell, the defendant's son, testified that the defendant, after being confronted by Ms. Morton, denied stealing anything. He recalled his mother saying, "I don't know why they are following me," and then asking, "Why are you all harassing me?" Michael Bell claimed that after the bag had been inspected, the security guard told them that it was okay to leave.

The defendant's twin sister, Anita Ann Bell, drove to the police station to pick up the defendant. Anita Bell, who admitted that she had been convicted of shoplifting on two prior occasions, claimed that the police returned two bags, one containing a white shirt and another containing a blue shirt.

In her challenge to the sufficiency of the evidence, the defendant claims that the testimony of Ms. Morton was inconsistent. She contends that Ms. Morton's assertion that she knew the merchandise had been taken and that she had seen the jacket through the bag was not credible. She asserts that Ms. Morton suspected something had been taken only because she noticed an empty hanger with a sales tag at the time she left the store. The defendant argues that Ms. Morton changed her testimony when she asserted on rebuttal that she had actually seen the defendant place the jacket into the shopping bag.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

Tennessee Code Annotated section 39-14-103 defines theft of property as occurring "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." In this bench trial, the trial judge accredited the testimony of Ms. Morton, the manager on duty at the Lady Foot Locker. While the testimony of Ms. Morton was, in fact, equivocal in regard to whether she actually saw the defendant place the jacket in the Dillard's bag, she unequivocally asserted that she had seen the stolen jacket in the bag minutes after the theft. Possession of recently stolen property implies participation in the theft. Barnes v. United States, 412 U.S. 837, 846-48 (1973). That the defendant fled from the scene, leaving the three young men in her charge, also allows an inference of guilt. State v. Zagorski, 701 S.W.2d 808, 313 (Tenn. 1985). In our view, a rational trier of fact could have found the essential elements of the crime.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE