**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Eugene GAMBLE et al.,
Defendants-Appellants.**

Nos. 75–1961–75–1964.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Aug. 24, 1976.

Decided Sept. 13, 1976.

Gordon L. Patten, Tulsa, Okl., for defendants-appellants Larry Eugene Gamble and Thomas Elmer Broaddrick.

James W. Fransein, Tulsa, Okl., for defendant-appellant Jimmy Joe Mitchell.

Thomas G. Hanlon, Tulsa, Okl., for defendant-appellant Robin Dennis Schubert.

Kenneth P. Snoke, Asst. U. S. Atty., Tulsa, Okl. (Nathan G. Graham, U. S. Atty., Tulsa, Okl., on the brief), for plaintiff-appellee.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

HILL, Circuit Judge.

Appellants, Larry Eugene Gamble, Thomas Elmer Broaddrick, Jimmy Joe Mitchell, and Robin Dennis Schubert, were indicted and jointly tried on three counts. Count one alleged a conspiracy to transport motor vehicles in interstate commerce and to receive, conceal, and sell the same in violation of 18 U.S.C. § 371. Count two was a substantive charge of interstate transportation of three stolen pickup trucks in violation of 18 U.S.C. §§ 2312 and 2. Count three alleged receiving, concealing, and selling the same three pickups in violation of 18 U.S.C. §§ 2313 and 2. Gamble and Broaddrick were convicted on all three counts. Mitch-

ell was convicted on count two, and Schubert was convicted on counts one and three. Each appellant challenges the sufficiency of the evidence against him and alleges various trial errors.

The evidence tended to establish an ongoing car theft conspiracy of some magnitude involving appellants and other co-conspirators. Rita Leslie Gipson, Ernie Lee Spears, and Pamela Ann Peterson were charged in the same indictment with appellants, but pleaded guilty. Gipson became the government's chief witness. All these persons lived in the "Dawson" area of Tulsa, Oklahoma, and most of them had been acquainted for several years. Their usual *modus operandi* was to steal cars in other states for sale in Oklahoma and to steal cars in Oklahoma for sale outside the state. The thefts were made by removing the original ignitions and inserting new ones provided by the thieves.

There was evidence that in July 1974, appellant Gamble and witness Gipson's former husband, Charlie Gipson, burglarized an auto license agency in Tulsa and stole numerous blank certificates of title. Six of these titles had been used by a Ray Wallace of Shreveport, Louisiana, in selling cars stolen in Oklahoma. Telephone and telegraph records showed a series of contacts between Gamble and Wallace. The bulk of the stolen titles were recovered by police and were admitted into evidence in this trial. None of them was used in connection with the vehicles involved in the substantive counts here, but blank titles were offered to the undercover agent purchaser.

Evidence also was admitted of appellant Broaddrick's prior involvement in car theft. On May 5, 1975, a policeman in Claremore, Oklahoma, had caught Broaddrick and four others, including co-conspirator Spears, in the act of stealing a pickup. Broaddrick escaped capture at this time, even though the policeman put a shotgun blast in his car's radiator.

The events leading to this indictment began in April 1975, as a result of dealings between Rita Gipson and Tulsa Police Investigator Sam Cox, who was working un-

dercover as a drug agent. In a meeting to discuss a drug transaction, Gipson asked Cox if he would like to buy some pickup trucks. She said she knew a guy who could get stolen pickups for $1,000 each and would supply a blank title made out however he wanted it. Cox expressed interest and Gipson set up a meeting with appellant Gamble for May 9, 1975.

When Cox and Gipson arrived at Gamble's, co-conspirators Peterson and Spears were present, but they left before the conversation began. Gamble offered to sell pickups for $1,000 each and said he would get them from out of state. Cox wanted to buy ten pickups at once with blank titles. Gamble wanted to sell fewer pickups one at a time and said the blank titles would cost extra. It was agreed that Gamble would talk to some other people and line up drivers, and Cox would come back later if he had the money to go through with the deal.

That evening Cox and Gipson returned to Gamble's house trailer. Spears and Peterson again were present along with appellant Schubert (Gipson's brother). Cox and Gipson saw two ignition switches lying on Gamble's bar. They then took Gamble to a shopping center parking lot and showed him $10,000 in cash contained in a suitcase. Gamble and Cox finally agreed on the sale of three pickups.

Two days later, however, Gamble told Gipson he thought Cox was a policeman, and he wanted nothing further to do with the deal. Gipson relayed this to investigator Cox, but said she could go through with the deal "with the same people" but without Gamble "out front on it."

That same day, Sunday, May 11, 1975, Gipson met appellant Broaddrick (also Gipson's ex-husband) at the "Spot" bar in the Dawson area of Tulsa. He was outside the bar with Spears, appellant Schubert, and some other persons taking pictures of "the guys" and his car, which he said had been "shot up by the pigs in Claremore" when he got caught stealing a pickup. Gipson told Broaddrick about her proposed deal with Cox, and he said he would talk with some

people and get back with her. Later that evening they met again near the Spot bar and Broaddrick agreed to provide the three pickups. He said he could get "the crew" together and get the pickups from Arkansas. He told Gipson he had two ignitions and needed one more. Gipson then told investigator Cox the deal was set.

On Tuesday, May 13, 1975, Gipson returned to the Spot bar looking for Broaddrick, but he wasn't there. Gipson left a message with appellant Schubert to tell Broaddrick to get the crew together and talk to her later. Gipson also talked to Spears at this time, and he said they were waiting for Broaddrick to arrive so they could go get the pickups. Gipson left for a while and when she returned to the bar, she found co-conspirators Spears, Peterson, appellant Mitchell, and two others. Spears said they were still waiting for Broaddrick.

Later that night, at about 10:00 p. m., Gipson went to the nearby Apollo Lounge where she saw Pam Peterson. Peterson was calling a wrecker. She and Spears had been riding with appellant Mitchell when he accidentally put his car in a ditch as a result of the rain-slicked streets. Gipson gave Peterson a ride back to the scene and talked to Mitchell. He told her everything was all right; they would get the trucks before the night was over. Gipson decided to go home for the night.

The next morning, May 14, 1975, Gipson drove around the Dawson area. She saw Broaddrick driving around in his car. Then she saw Mitchell driving around in the company of Spears and Peterson. Spears told her the trucks were in and gave her their location. She returned home to call Cox and tell him. When she arrived, one of the pickups was in her driveway. Appellant Schubert drove up and asked her if she had checked the glove compartment for registration papers. He said he was supposed to give her a message to destroy any registration papers she found there.

When Cox met Gipson to make the agreed payment, Gipson was arrested and quickly agreed to cooperate with the police.

All three trucks had been stolen in Arkansas on the night of May 13, 1975. Two of them were stolen from Siloam Springs, Arkansas, where appellant Mitchell had formerly resided. Of those involved, only Peterson and appellant Schubert were seen driving stolen pickups.

We first will examine the sufficiency of the evidence against each appellant. The principles of law we apply are fully stated with numerous citations in *United States v. Thomas,* 468 F.2d 422 (10th Cir. 1972), *cert. den'd,* 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599. It is noted there that conspiracy may be proved by circumstantial evidence and that a party may join a conspiracy during its progress and be held liable for all acts done in furtherance of the scheme. In determining the sufficiency of the evidence we must view it in the light most favorable to the prosecution. *United States v. Yates,* 470 F.2d 968 (10th Cir. 1972).

With regard to appellant Gamble, we believe the evidence of his involvement in the conspiracy is abundant. Taken alone, his agreement with Gipson to supply to Cox pickups stolen from out of state and his attendance at the money showing would sustain a conspiracy conviction. Because Gamble was sentenced to concurrent five-year terms on each count, we decline to consider the contentions relating to the other two counts which would have no effect on the sentence. *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *United States v. Bath,* 504 F.2d 456 (10th Cir. 1974).

Appellant Broaddrick's arguments concerning the sufficiency of the evidence are also without merit. Testimony identified him as the organizer of the transportation, concealment, and sale of the three stolen pickup trucks delivered to the police through Gipson. Broaddrick directed "the crew" and provided them with the ignitions necessary to make the thefts. Under the principles stated in *United States v. Thomas, supra,* this evidence is sufficient to impose criminal liability on all counts.

Appellant Mitchell was convicted of one count of interstate transportation of stolen motor vehicles. The evidence shows he was present during conversations pertaining to the conspiracy. On the night the thefts were made, he was with confessed co-conspirators Spears and Peterson. He was with them the following morning when the pickups were delivered in Tulsa. He had personally told Gipson not to worry that "they," including himself and Spears and Peterson, would get the trucks. In addition, he was the only defendant specifically shown to be familiar with the Siloam Springs, Arkansas, area where two of the trucks were stolen. We are convinced this evidence supports a finding of guilt beyond a reasonable doubt.

With regard to appellant Schubert, there is evidence that he was present at the time of conversations relevant to the conspiracy, that he was asked to deliver a message to Broaddrick, that he delivered a message to Gipson to destroy the registration for one stolen pickup, and that he was seen driving one of the stolen pickups after its arrival in Tulsa. This is sufficient evidence to sustain his conviction on counts one and three.

Appellants contend the trial court erred in refusing to consider their motion to suppress as evidence the stolen Oklahoma title certificates on the ground they lacked standing to contest the search. The titles were found during a search of a car belonging to someone other than appellants. Appellants seek to obtain standing on the assertion that possession of the titles was an essential element of the offense charged. *See Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). The assertion is baseless. Possession of the stolen title certificates obviously is not an element of any offense charged.

Appellants next contend, without citation to relevant authority, that the trial court erred in admitting evidence of Gamble's prior involvement in the title agency burglary and of Broaddrick's prior involvement in auto theft. We believe this

evidence was admissible to show ". . . motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R. Evidence 404(b); *see United States v. Coleman,* 410 F.2d 1133 (10th Cir. 1969). Such evidence is particularly relevant in a conspiracy case.

 Finally, appellants Mitchell and Schubert contend the trial court erred in not granting a severance of their trial from that of Gamble and Broaddrick and in not granting a severance of the conspiracy count from the substantive counts. They allege they were prejudiced by admission of the evidence of prior criminal acts committed by Gamble and Broaddrick. As we stated above, however, this evidence was admissible against all appellants and would have been admissible in a separate trial. *See Lowther v. United States,* 455 F.2d 657 (10th Cir. 1972), *cert. den'd,* 409 U.S. 857, 93 S.Ct. 114, 34 L.Ed.2d 102. Concerning the denial of severance of offenses, Mitchell and Schubert have shown no more than the fact that "a separate trial might offer [them] a better chance of acquittal." We have held this is not a sufficient showing of prejudice to warrant a reversal. *United States v. Van Scoy,* 482 F.2d 347, 349 (10th Cir. 1973). Granting or denying a motion for severance is within the trial court's discretion, and we find no abuse of that discretion here. F.R.Crim.P. 14; *United States v. Van Scoy, supra,* and cases cited therein.

We have examined the record thoroughly and find no reversible error. The judgment against each appellant is affirmed.