UNITED STATES, Appellee,

v.

Thomas R. SROKA, Defendant, Appellant.

No. 80–1024.

United States Court of Appeals, First Circuit.

Argued May 9, 1980.

Decided July 17, 1980.

Richard F. McCarthy, Boston, Mass. by appointment of the Court, with whom Willcox, Pirozzolo & McCarthy, Boston, Mass., was on brief, for defendant, appellant.

John W. Laymon, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL and BOWNES, Circuit Judges, and DAVIS,* Judge, U. S. Court of Claims.

LEVIN H. CAMPBELL, Circuit Judge.

Defendant Thomas R. Sroka appeals from his conviction on two counts of transporting and selling a stolen automobile in interstate commerce in violation of 18 U.S.C. §§ 2312, 2313. Defendant argues that the evidence was insufficient to support his conviction in that it was not shown beyond a reasonable doubt that the automobile he sold was stolen.

## I.

Defendant was originally charged in eight counts with transporting and selling four different described automobiles in interstate commerce. At the close of the government's case, defendant moved for judgment of acquittal on the ground of insufficiency of the evidence. This motion

was granted as to six of the counts. Counts four and five,[1] relating to a 1972 Ford Maverick, Vehicle Identification No. 2X93F226464, were allowed to go to the jury, and defendant was found guilty on both counts. This appeal is from that conviction.

The government's case with regard to the 1972 Maverick rested on the testimony of five witnesses. Wilbur Patch, a used car dealer and resident of Connecticut, testified to the theft on April 6, 1978, of his 1972 Ford Maverick, "midnight blue, just recently painted, pinstripe" with a 302 engine, a gold grill and a black interior. Patch stated he had parked the car while visiting his daughter at the Lawrence Memorial Hospital in New London, Connecticut, and when he came out the vehicle was missing. He testified that he did not know the vehicle identification number and did not presently own the car, having sold it since to another person.

Philip Gross testified that he and two other men—Victor Kiendra and Frederick Fraser—met during the months of February, March and April of 1978 for the purpose of going out of the state of Rhode Island to steal cars "from Fall River and around New London, Connecticut." When asked if he had taken a car on April 6, 1978, "from the New London Mall," in New London, Connecticut, Gross acknowledged he had been "present when the car was took." He testified that the car was a "really dark, dark blue" 1972 Ford Maverick with two doors. He made no mention of a pinstripe, nor, understandably, did he testify to an ID number. After stealing the car, Gross said, he and the other two men took it on the

---

* Sitting by designation.

1. Count four of the indictment stated:
   "Thomas R. Sroka on or about April 7, 1978, did transport and cause to be transported in interstate commerce from Connecticut to Massachusetts, a motor vehicle, to wit: a 1972 Ford Maverick, true Vehicle Identification No. 2X93F226464, knowing the same to have been stolen; in violation of Title 18, United States Code, Section 2312."

   Count five of the indictment stated:
   "Thomas R. Sroka on or about April 8, 1978, at North Attleboro, in the District of Massachusetts, did barter, sell, and dispose of a motor vehicle, to wit: a 1972 Ford Maverick, true Vehicle Identification No. 2X93F226464, which was then moving in and was a part of interstate commerce from Connecticut to Massachusetts, knowing the said motor vehicle to have been stolen; in violation of Title 18, United States Code, Section 2313."

very same night to defendant's garage in Rhode Island. Defendant was not present at the time. The men removed two radios from the car, and Kiendra, who had a key to the garage, opened the door so they could leave the car inside.

Over defendant's objections Gross also testified that when he and the other two men stole cars during the months of February, March and April, 1978, they took them to a bar in Rhode Island called the Valley Pub. There they were sometimes met by defendant, who would look at the cars and ask that they be left in the parking lot with the driver door unlocked and the keys in the ignition. Gross also testified that after these transactions, he would be given money by the other two men. Gross did not testify as to the content of any conversations between defendant and Kiendra or Fraser.

Daniel Fisher, a North Attleboro, Massachusetts, car dealer, testified that on April 8, 1978 he bought a 1972 Maverick from defendant. Fisher, who said he had bought cars from defendant on other occasions, described the Maverick as being dark blue and having gold pinstripes. Fisher's wife testified that she kept the books for Fisher's business. She produced a bill of sale for a 1972 Maverick, dark blue, with vehicle identification number 02X93F226464. This bill of sale, and a check payable to defendant for $1,225, were introduced into evidence. On redirect examination, Mrs. Fisher responded "Yes" when asked if the 1972 Maverick had some unusual feature on it, and described this feature as "hand painted pinstripes."

Finally, Detective Brian Coyle of the North Attleboro police testified that on May 7, 1978 he and two other officers went to Fisher's car lot where they observed approximately 12 cars, some of which Coyle believed to be stolen. Coyle interviewed the defendant in July 1978, at which time defendant admitted knowing the Fishers and having sold them several cars which he bought from a person by the name of Fraser.

## II.

Defendant contends the district court erred in refusing to grant his motion for judgment of acquittal as to counts four and five because the government failed to establish that the 1972 Ford Maverick allegedly stolen in Connecticut was the same car as the one defendant had in his possession and sold to the Fishers two days later in Massachusetts. To prove a violation of 18 U.S.C. § 2312, which prohibits interstate transportation of stolen cars, the government had to show 1) that the vehicle was stolen; 2) that defendant transported the vehicle, or caused it to be transported, in interstate commerce; and 3) that defendant knew the vehicle was stolen when he transported it. *United States v. Canessa*, 534 F.2d 402, 403 (1st Cir. 1976). To prove a violation of section 2313, the government also had to establish that defendant sold, bartered, or disposed of the vehicle after it had moved, or while it was moving, in interstate commerce.

In the present case, the court instructed, and the government emphasized, that absent a satisfactory explanation, a person in possession in one state of property recently stolen in another may be held to have known that it was stolen, and also to have transported or caused it to be transported in interstate commerce. *See Canessa, supra*, 534 F.2d at 403. Defendant concedes the propriety of this inference in a proper case, but points out that it can apply only if the prosecution proves that the vehicle found in defendant's possession was stolen. Here, defendant argues, the government's evidence fell short of establishing that the 1972 Maverick, ID No. 2X93F226464, sold to the Fishers by defendant on April 8, 1978, was the same 1972 Maverick stolen from Wilbur Patch on April 6, 1978, at the time Patch was visiting his daughter in the Lawrence Memorial Hospital in New London.

In *Cox v. United States*, 96 F.2d 41, 42 (8th Cir. 1938), the Eighth Circuit stated: "Proof that an automobile of a well-known and widely distributed type and

model is stolen in one state on Saturday and that a similar car is sold and delivered in an adjoining state on the following day is not sufficient evidence upon which to base a finding that the automobile stolen was the automobile sold . . . ."

■ While courts have not required the car sold and the car stolen to be identified by serial number in every case, *see Welch v. United States*, 360 F.2d 164, 165 (10th Cir. 1966), it is well settled that merely showing that a car of a standard make, model, color and year was stolen from one place and a similar car was found in defendant's possession in another place does not suffice to show that the two were one. *E. g., United States v. Brazeal*, 464 F.2d 1, 2 (10th Cir. 1972); *United States v. Turner*, 421 F.2d 252, 253 (10th Cir. 1970); *Thompson v. United States*, 334 F.2d 207, 208–09 (5th Cir. 1964). To surmount this hurdle, courts have generally required some "common identifying characteristics," *Watkins v. United States*, 409 F.2d 1382, 1384 (5th Cir.), *cert. denied*, 396 U.S. 921, 90 S.Ct. 252, 24 L.Ed.2d 202 (1969), beyond the color, make and model of the car, or some other evidence that would support the factfinder's conclusion that the two cars were in fact the same. *See United States v. Smith*, 493 F.2d 24, 25 (5th Cir.) (per curiam), *cert. denied*, 419 U.S. 856, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974).

In this case, the district court ruled that the government had failed to show with respect to three of the cars charged in the indictment that they were in fact the cars described by their owners as having been stolen. With respect to the fourth car, the 1972 Maverick, ID No. 2X93F226464, the district court held that, while the prosecution's proof left much to be desired, the testimony describing the car as having a recently painted pinstripe was sufficient to identify the car sold with the car stolen. In reviewing the sufficiency of the evidence on this point, we must, of course, view the

evidence, together with the inferences reasonably to be drawn therefrom, in the light most favorable to the government. *United States v. Canessa*, 534 F.2d 402, 403 (1st Cir. 1976). The question is whether a reasonable jury could conclude, beyond a reasonable doubt, that the cars were the same.

■ The car which Patch said was stolen from him on April 6 in the vicinity of the Lawrence Memorial Hospital was described by him as a 1972 Ford Maverick which had recently been painted midnight blue and which bore some kind of a pinstripe, not further described. The Fishers testified that the car they purchased from defendant was a dark blue 1972 Ford Maverick and that it had a gold "hand painted pinstripe." In addition to the similarity of make, model, color and year—and the pinstripe—the government introduced two lines of testimony, both from the witness Philip Gross, to bolster the contention that the car defendant sold to the Fishers was in fact the same car stolen from Patch and hence a stolen car. Gross first testified that on other occasions he and his accomplices took stolen cars from other states to a bar in Rhode Island where they were delivered into defendant's possession. This testimony was indicative of guilty knowledge on the part of defendant relative to any cars in his possession that were in fact stolen. *See, e. g., United States v. Gamble*, 541 F.2d 873, 877–78 (10th Cir. 1976). But it was not competent to establish that the car described in the indictment—the one sold to the Fishers and described as ID No. 2X93F226464—was itself a stolen car.

Gross also testified that on April 6 he was present at the New London Mall when a dark blue 1972 Ford Maverick was stolen and that this car was delivered to defendant's garage the same day. Had the government's evidence been such as to indicate that the car Gross helped steal on April 6 was very probably the same car stolen from Patch that day, this would have gone a long way toward establishing that the

pinstriped car defendant sold on April 8 must have been Patch's car.

The government's evidence not only failed to connect the New London Mall theft with the theft from Patch, however—in light of recent disclosures, it pointed in precisely the opposite direction. While both vehicles were dark blue 1972 Mavericks, Gross made no mention of a pinstripe and, most fatal to the government's case, he described the theft as having occurred at a place different from the place where Patch's car would have been when it was stolen. Patch testified that his car was stolen while he was visiting his daughter at the Lawrence Memorial Hospital. Gross's testimony indicated the car was stolen from the New London Mall. When this appeal was argued, we inquired of government's counsel concerning this evident discrepancy, which the record does not explain, and were assured that the Mall and the Hospital were close by, the impression being left that Hospital visitors might normally park at the Mall.

Upon our pursuing the matter, however, the government filed an affidavit conceding that the Lawrence Memorial Hospital is 2.9 miles from the New London Mall and further conceding that it would be unrealistic to expect a person to park at the Mall while visiting the Hospital. It is not clear exactly where this leaves us, the information being dehors the record; but one thing is crystal clear—we are not prepared to rely on Gross's testimony of the Mall theft as reinforcing the nexus between Patch's stolen vehicle and the one traced to defendant. To the contrary, we can only conclude, based on the government's affidavit, that whatever vehicle Gross and his confederates took from the New London Mall could not have been Patch's.

■ Particularly in light of this puzzling discrepancy in the government's proof 'which, of course, would not have been so ᴠarent to the district court), we feel obliged to conclude that the government's evidence was insufficient to establish beyond a reasonable doubt that the car sold to the Fishers was stolen. The government's theory was that Gross, Kiendra, and Fraser were the procurers of stolen cars for defendant. Had Gross and his accomplices on the same day taken a 1972 blue Maverick from the vicinity of the Hospital, as well as from the Mall, Gross might have been expected to have said so in his testimony. If Gross and the others did not take Patch's car, the government's argument that, because of the pinstripe, the car sold to the Fishers must have been the car stolen from Patch loses must of its force. We recognize that there may doubtless be some simple answer to all this, having perhaps more to do with the government's failure to set forth its full case than anything else. But the government had ample means to establish, if such were the case, that the car ultimately recovered from the Fishers, and presumably returned to Patch, was in fact Patch's stolen vehicle. The government's failure to produce the evidence normally to be expected, coupled with the confusion just described, casts serious doubt on the accuracy of the government's evidence and leaves us no choice but to reverse.

*Reversed.*