930 F.2d 35
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Duncan Emery MCDANIEL, Defendant-Appellant.
 No. 90-5095.
 United States Court of Appeals, Tenth Circuit.
 April 3, 1991.
 
 Before McKAY, SETH and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 SETH, Circuit Judge.
 
 
 1
 On April 6, 1989, appellant Duncan Emery McDaniel and his co-defendant Dorothy Mae Dowler (No. 90-5094) were indicted for conspiring to defraud in interstate commerce. McDaniel was tried and convicted of one count of conspiracy in violation of 18 U.S.C. Sec. 371 and five counts of causing interstate travel in furtherance of fraud in violation of 18 U.S.C. Sec. 2314. McDaniel argues on appeal that the district court erred in denying his motion to suppress business documents and erred in denying his motion for judgment of acquittal n.o.v. For the reasons that follow, we affirm the decision of the trial court.
 
 
 2
 McDaniel's convictions arose from his transactions with co-defendant Dowler and Oklahoma businessman Lawrence Hull. Hull's involvement with Dowler and McDaniel began in May 1985 when Hull contacted Dowler seeking to obtain a $2,000,000.00 loan to finance an ethanol plant. Hull and Dowler signed a Loan Acquisition Agreement on June 6, 1985 which provided that Dowler would receive a finder's fee equal to 2% of the total loan and would have out-of-pocket expenses reimbursed up to 5% of the total loan amount. Hull testified that McDaniel was not a party to the contract.
 
 
 3
 The day after signing the agreement Hull wired Dowler $3,000.00 expense money. Ten days later, based on Dowler's communication to Hull that the funding for the loan looked good, Hull personally delivered an additional check for $50,000.00 to Dowler. Dowler told Hull the money would be placed in an escrow account in Dallas. Dowler, without Hull's knowledge, deposited the money in an account in the First Alief Bank in Alief, Texas. Two to three weeks later she phoned Hull and told him the loan had been preliminarily approved.
 
 
 4
 During the latter months of 1985, Hull met with Dowler and McDaniel to further discuss the loan. Hull testified that he first met McDaniel at an August 20, 1985 meeting in New York City. McDaniel was introduced as the person with the overseas money contacts necessary to secure the loan. Hull specifically discussed the loan with McDaniel at a September 4, 1985 meeting in Dallas, Texas and at a September 12, 1985 meeting in Myrtle Beach, South Carolina. Hull testified that at the September 12 meeting McDaniel told Hull that everything was preliminarily approved and all that was needed was completion of the paper work and transmittal of the funds. McDaniel and Dowler relayed this same information to Hull at additional meetings in Myrtle Beach on October 3, 1985 and October 26, 1985.
 
 
 5
 Hull never met personally with Dowler or McDaniel after the October 26 meeting. Hull did have subsequent phone conversations with both Dowler and McDaniel and was again told that the loan was proceeding and that there was no need for the escrow money to be paid back to him. By late November or early December 1985, however, Hull discovered that McDaniel and Dowler were no longer residing in Myrtle Beach. Except for a single phone conversation with Dowler in California, Hull never heard from Dowler or McDaniel again. His $50,000 escrow money was not returned.
 
 
 6
 The alleged unconstitutional search of the business records occurred at a Newport Beach, California apartment rented by Dowler. The evidence from the Motion to Suppress hearing established that the apartment was rented by Dowler on a month-to-month basis beginning November 1, 1986. The rental deposit receipt listed Dowler and her daughter as the occupants of the apartment and listed Robert Lucas, her chauffeur, as the person to contact in case of an emergency.
 
 
 7
 Dowler testified that she planned to live in the Newport Beach apartment with McDaniel after McDaniel returned from business in China. She stated that she moved McDaniel's personal belongings and business documents from the apartment Dowler and McDaniel previously shared to the Newport Beach apartment. McDaniel's business records were commingled with Dowler's.
 
 
 8
 Dowler failed to pay the December rent. On December 30, 1986, the apartment manager moved the contents of the apartment, including the boxes of documents, into a storage locker at the apartment complex. The documents remained in the locker until February 26, 1987 when they were seized by the Newport Beach police. The FBI obtained the documents from the Newport Beach police on January 26, 1988.
 
 Standing
 
 9
 McDaniel argues that he had standing to contest the search because he had a reasonable expectation of privacy in his own business records. The district court rejected this argument and found that McDaniel lacked standing to challenge the search of the documents because he had no expectation of privacy in the Newport Beach apartment or the apartment manager's storage locker.
 
 
 10
 We accept the factual findings underlying the district court's holding unless they are clearly erroneous. United States v. Rubio-Rivera, 917 F.2d 1271 (10th Cir.). Because standing is a matter of substantive Fourth Amendment law, Rakas v. Illinois, 439 U.S. 128, we review de novo the ultimate determination of reasonableness under the Fourth Amendment. United States v. Arango, 912 F.2d 441 (10th Cir.).
 
 
 11
 To have standing to challenge the search, McDaniel must demonstrate that his own constitutional rights have been violated. United States v. Erwin, 875 F.2d 268, 270 (10th Cir.). Standing is determined by analyzing "whether the individual, by his conduct has 'exhibited an actual (subjective) expectation of privacy,' ... and whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable." ' " Smith v. Maryland, 442 U.S. 735, 740 (quoting Katz v. United States, 389 U.S. 347, 361). The expectation of privacy must be demonstrated in the area searched, not merely in the items seized. United States v. Skowronski, 827 F.2d 1414, 1418 (10th Cir.) (citing United States v. Salvucci, 448 U.S. 83, 93).
 
 
 12
 Applying these principles to the present case, McDaniel's argument must fail. McDaniel never demonstrated an expectation of privacy in the apartment rented by Dowler. The testimony at the suppression hearing established that McDaniel was in China when the rental agreement was signed. McDaniel never stepped foot in the Newport Beach apartment.
 
 
 13
 On his return to California in December 1986, McDaniel lived in San Francisco, making no effort to obtain his belongings from the Newport Beach apartment while they were there. While it is possible for someone other than the owner or lessee to have an expectation of privacy in an apartment, see Rakas, 439 U.S. at 142 (explaining Jones v. United States, 362 U.S. 257, 263), the district court properly determined that this did not occur in the present case.
 
 
 14
 McDaniel correctly notes that he has a possessory interest in his business papers. However, he incorrectly equates this possessory interest with a right to privacy in the boxes and file cabinet containing the papers. Dowler, not McDaniel, placed the records in the boxes and file cabinets and moved them to the Newport Beach apartment. McDaniel did not purport to control and had no ability to control the documents or exclude others from gaining access to the documents. See Rakas 439 U.S. at 143, n. 12. Viewed objectively, this evidence is insufficient to establish a reasonable expectation of privacy in the boxes and file cabinets.
 
 Sufficiency of the Evidence
 
 15
 McDaniel also contests the district court's denial of his motion for judgment of acquittal n.o.v. In reviewing McDaniel's claim, we consider all proof, direct and circumstantial, in the light most favorable to the government to determine if a reasonable jury could find McDaniel guilty beyond a reasonable doubt. United States v. Culpepper, 834 F.2d 879, 881 (10th Cir.); United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.).
 
 
 16
 McDaniel initially challenges the sufficiency of the evidence supporting his conspiracy conviction. We have previously held that a conspiracy conviction must be based on more than a mere suspicion of guilt and cannot be obtained through an accumulation of inferences. See United States v. Fox, 902 F.2d 1508, 1513 (10th Cir.). The government had to prove that a conspiracy existed, McDaniel knew of the conspiracy, and McDaniel knowingly participated in the conspiracy. However, once an overall conspiracy was established, the jury only had to find "slight evidence" to implicate McDaniel as a co-conspirator. See United States v. Troutman, 814 F.2d 1428, 1446 (10th Cir.).
 
 
 17
 McDaniel argues that insufficient evidence was introduced to establish an overall conspiracy. He argues that Dowler's fraudulent transactions with Hull occurred between May 1985 and July 1985, a month before he became involved with Dowler. He contends that most of the $50,000.00 escrow money was spent before the end of June 1985.
 
 
 18
 While McDaniel correctly outlines the time frame of his involvement with Dowler, his non-participation in the initial Hull-Dowler transactions does not preclude his participation in an ongoing conspiracy. From the evidence introduced at trial, it appears that Dowler was not working alone when she made her initial contacts with Hull. Hull testified that Alonzo Owens first introduced Hull to Dowler. Dowler and McDaniel's joint statement to the FBI in May 1988, indicates that Owens was the person who received the initial $3,000.00 expense money paid by Hull to Dowler. There also is some evidence that an additional person, referred to as "Bubba", was involved with Dowler and Owens during their initial transactions with Hull.
 
 
 19
 Viewed in the light most favorable to the government, Dowler's relationship with Owens by itself is sufficient for a reasonable jury to infer the beginning of a conspiracy. McDaniel's subsequent meetings with Dowler and Hull are sufficient to link him with the ongoing conspiracy to defraud Hull. It is well established that a party may join an ongoing conspiracy in progress and become criminally liable for acts done in furtherance of the conspiracy. See United States v. Gamble, 541 F.2d 873 (10th Cir.). A jury could reasonably infer that McDaniel knew of the conspiracy to defraud Hull and knowingly participated in it.
 
 
 20
 Sufficient evidence was also introduced to support McDaniel's conviction on substantive counts 3, 4, 5, 6 and 7 of the indictment. Hull testified that he traveled to each of the locations charged in the indictment at the request of Dowler and McDaniel to discuss financing the loan. While McDaniel may not have initiated those meetings, McDaniel was present at each meeting and had some direct contact with Hull. McDaniel's participation ranged from being introduced as the person with overseas money contacts at the New York meeting (Count III) to the person who told Hull that the loan was preliminarily approved at the first Myrtle Beach meeting (Count V). This participation was sufficient for a reasonable jury to find McDaniel guilty beyond a reasonable doubt of the substantive charges.
 
 
 21
 Accordingly, the rulings of the district court denying McDaniel's motion to suppress and denying his motion for judgment of acquittal were correct and the judgment is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3