STATE of Iowa, Appellee,

v.

Michael Tim RINEHART, Appellant.

No. 62729.

Supreme Court of Iowa.

Sept. 19, 1979.

Thomas J. Levis, of Scalise, Scism, Gentry, Brick & Brick, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Faison T. Sessoms, Jr., Asst. Atty. Gen., and Monte L. Fisher, Webster County Atty., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, ALLBEE, and LARSON, JJ.

LARSON, Justice.

Defendant appeals from sentence of life imprisonment following conviction of kidnapping in the first degree in violation of section 710.2, The Code. He asserts: (1) the trial court should have directed a verdict at the close of the State's case in chief; (2) he was denied due process by instructions that the jury could infer from commission of the proscribed acts both the defendant's specific intent to commit the crime and his knowledge that he had neither the authority nor the victim's consent to remove her; (3) the evidence is insufficient to support the verdict; and (4) the failure of the State to inform defendant of the identity of one of its rebuttal witnesses violated due process. We affirm the trial court.

Section 710.1 provides in relevant part:

A person commits kidnapping when he or she either confines a person or removes a person from one place to another, *knowing* that he or she has neither the authority nor the consent of the other to do so; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:

. . . . .

3. The *intent* to inflict serious injury upon such person, or to subject the person to a sexual abuse. (Emphasis added.)

At trial defendant did not dispute the State's claim that he committed acts which constitute first-degree kidnapping. He admitted he removed the victim from a super-market parking lot to a secluded country lane where he subjected her to sexual abuse and inflicted serious injury upon her. However, he claimed that ingestion of a hallucinogenic drug before the acts rendered him incapable of meeting the specific intent and knowledge elements of the crime.

I. *Failure to Direct a Verdict.* Defendant notified the prosecution prior to trial of his intent to assert a defense of diminished capacity. He argues that this created a duty in the State to present evidence in its case in chief to counter this defense. When it did not, he moved for a directed verdict.

This assignment of error is without merit because "[e]rror cannot be predicated on failure to grant a motion for directed verdict made at the close of the State's evidence." *State v. House,* 223 N.W.2d 195, 195 (Iowa 1974). *Accord, State v. Dahlstrom,* 224 N.W.2d 443, 446 (Iowa 1974). We also note that defendant is incorrect in his assessment of the effect of his defense on the State's burden of proof. A defense of diminished responsibility does not

requir[e] the State to disprove the defense as an additional element of its case. The reason is the jury is separately told the State must affirmatively prove the element involved as part of its case. Accordingly, evidence raising a theory of defense like diminished responsibility is simply to be considered by the jury in determining whether the State met its burden to prove the element involved.

*State v. Buchanan,* 207 N.W.2d 784, 789 (Iowa 1973) (McCormick, J., concurring specially). *Cf. State v. Templeton,* 258 N.W.2d 380, 383 (Iowa 1977) (intoxication). Since the State is not required to disprove diminished responsibility, it did not have to address the defense during its case in chief.

II. *Instructions on Intent and Knowledge.* The trial court submitted the following instructions:

Instruction No. 19

Where intent is an essential element of the degrees of offense charged, it must be proved beyond a reasonable doubt.

Intent is a mental state, emotion, or condition of the mind with a design, resolve or determination that the doing of an act shall be with a certain purpose. As such, intent is seldom, if ever, capable of direct and positive proof. Rather, the intent, if any, may be arrived at by such reasonable inferences and deductions as may be drawn from the facts proved by the evidence in accordance with common experience and observation. *In determining the intent of any person you have a right to infer that he intended the natural and probable consequences which ordinarily follow his acts.* (Emphasis added.)

Instruction No. 20

The term "knew" or "knowledge" as used in these instructions refers to the defendant's state of mind at the time or just prior to the commission of the offense with which he is charged. Because it is a state of mind, it is seldom capable of direct or positive proof. Ordinarily it must be determined from the words and conduct of the person and the just and reasonable inferences which may be drawn therefrom in accordance with common experience and observation. *In determining the knowledge of a person, you have a right to infer that he knew the natural and probable consequences of his voluntary acts which ordinarily follow such acts.* (Emphasis added.)

These instructions are clearly in conformity with our previous cases. *See, e. g., State v. Chatterson,* 259 N.W.2d 766, 769–70 (Iowa 1977) (assault with intent to maim); *State v. True,* 190 N.W.2d 405, 406–07 (Iowa 1971) (arson). Defendant argues that due to his defense of diminished capacity the utilization of these inferences unconstitutionally shifted the burden of proof and the burden of production to him.

The task of analyzing defendant's contentions is greatly aided by two recent United States Supreme Court opinions concerning inferences and presumptions, *County Court of Ulster County, New York v. Allen,* —— U.S. ——, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and *Sandstrom v. Montana,* —— U.S.

——, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The Court noted that

[i]nferences and presumptions are a staple of our adversarial system of fact finding. It is often necessary for the trier of fact to determine the evidence of an element of the crime—that is, an "ultimate" or "elemental" fact—from the existence of one or more "evidentiary" or "basic" facts. The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt.

*Allen,* —— U.S. at ——, 99 S.Ct. at 2224, 60 L.Ed.2d at 791 (citations omitted).

Whether or not such a device impermissibly undermines the factfinder's responsibility depends on whether it is a *permissible* inference or presumption or a *mandatory* presumption.

[T]he entirely permissive inference or presumption . . . allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant. . . . Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond the reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination.

A mandatory presumption . . . may affect not only the strength of the "no reasonable doubt" burden but also the placement of the burden; it tells the trier [of fact] that he or they *must* find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts.

*Id.* at ——, 99 S.Ct. at 2224, 60 L.Ed.2d at 792 (citation omitted).

 Our initial inquiry, then, is into the nature of the device employed in these instructions. In order for a device to pass constitutional muster, it must be presented in such a manner that the jury is fully apprised of their option to reject its application. This "determination requires careful attention to the words actually spoken to the jury, . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror *could have* interpreted the instruction." *Sandstrom,* —— U.S. at ——, 99 S.Ct. at 2454, 61 L.Ed.2d at 45 (emphasis added) (citing *Allen,* —— U.S. at —— n. 16, 99 S.Ct. at 2225 n. 16, 60 L.Ed.2d at 792–93). We believe that the wording and context of these instructions would preclude a reasonable juror from construing them as mandatory presumptions.

The other instructions clearly indicated that the burden on all issues was on the State and that evidence other than the inference should be considered on the issue of intent. The jury was instructed five times, including at the beginning of the challenged instruction on intent, that the State must prove the defendant guilty beyond a reasonable doubt; it was instructed that this burden of persuasion must be carried as to "each and all of the elements; " it was instructed on the presumption of defendant's innocence; it was instructed that diminished responsibility could negate specific intent in an instruction which reaffirmed the State's burden to prove that issue beyond a reasonable doubt; and it was instructed that "the question of the defendant being under the influence of drugs . .

should be considered *along with all the other evidence* in the case which bears on the question of intent." (Emphasis added.)

In considering whether a mandatory presumption was created, in violation of the *Allen-Sandstrom* rule, it is also helpful to consider what the instructions did *not* say. At no point did they state, or imply, that elemental facts inferred from those proven would stand as established absent rebuttal by the defendant, so as to constitute a shifting of the "no reasonable doubt" burden.

The fact that the jury was instructed that "you have a right to *infer*" is also highly important. It is very different from the language utilized in *Sandstrom.*

Sandstrom's jurors were told that "the law presumes that a person intends the ordinary consequences of his voluntary acts." They were not told that they had a choice, *or that they might infer* that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory.

*Sandstrom,* —— U.S. at ——, 99 S.Ct. at 2454, 61 L.Ed.2d at 45 (emphasis added). In coming to this conclusion, the court emphasized "the common definition of 'presume' as 'to suppose to be true without proof.' " *Id.* at ——, 99 S.Ct. at 2456, 61 L.Ed.2d at 46. By contrast, to "infer" means "to derive by reasoning or implication [or] conclude from facts or premises." Webster's Third New International Dictionary 1158 (1961). Thus, rather than limiting the assessment of other evidence, this term invites such an assessment. It is also very significant that these instructions were couched in permissive words: "you *have a right to* infer." *See Allen,* —— U.S. at —— n. 16, 99 S.Ct. at 2225 n. 16, 60 L.Ed.2d at 792–93. This is very similar to the wording of the instruction involved in *Allen,* —— U.S. at —— n. 20, 99 S.Ct. at 2227 n. 20, 60 L.Ed.2d at 794–95 ("you may infer"), and apparently approved in the emphasized portion of the above-quoted material from *Sandstrom.*

We have not overlooked the fact that the instruction in *Allen* was accompanied by a qualifying instruction which insured that the jury would fully comprehend the permissive nature of the presumption. The instructions there stated the presumption was merely a part of the prosecution's case, that it was not mandatory and that it could be ignored by the jury even without rebuttal by the defendants. *See id.* Trial courts would be prudent to include similar qualifying language in presumption-creating instructions. We also recognize that the lack of such a qualifying instruction was emphasized in *Sandstrom.* —— U.S. at ——, 99 S.Ct. at 2455, 61 L.Ed.2d at 45–46. However, the presence of such an instruction is not the controlling consideration; it is only one factor in the determination. We believe that the instructions here, when read as a whole, clearly conveyed to the jury the concept of permissiveness in the application of the inferences, even without an express instruction to that effect.

Our analysis does not end once we have determined that the instructions constitute permissive inferences. It is necessary to make the further determination that "there is a 'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and that the latter is 'more likely than not to flow from' the former." *Allen,* —— U.S. at ——, 99 S.Ct. at 2228, 60 L.Ed.2d at 797.

The factors considered in making this determination were set out in *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973): "history, common sense, and experience." *Allen,* —— U.S. at ——, 99 S.Ct. at 2232, 60 L.Ed.2d at 801. Both of the challenged instructions informed the jury that such inferences must be considered "in accordance with common experience and observation." That is essentially the test enunciated in *Barnes.* The inferences are certainly supported by common sense and experience. Also, this court has always allowed resort to these inferences to prove specific intent. *E. g., State v. Gillett,* 56 Iowa 459, 461, 9 N.W. 362, 363 (1881) (assault with intent to inflict a great bodily injury). Therefore, on the basis of the

*Barnes* considerations, the inferences in question are clearly rational.

■ III. *Sufficiency of the Evidence.* In determining the sufficiency of the evidence, "we . . . view the evidence in the light most favorable to the state, regardless of whether it is contradicted, and every reasonable inference that may be deduced therefrom must be considered to supplement that evidence." *State v. Jones,* 281 N.W.2d 13, 18 (Iowa 1979). In view of that rule, it could be argued that the inferences themselves are sufficient to support the verdict. However, we note that there was additional evidence—in the form of expert testimony—to aid the State in meeting its burden of proof on the issues of specific intent and knowledge.

■ As noted above defendant's contention was that he was incapable of normal mental functioning due to ingestion of a hallucinogenic drug. He claimed the major effect of the drug was a mental blackout in the nature of amnesia. Dr. Taylor, defendant's own expert, testified there were inconsistencies between the State's evidence and defendant's claim he suffered such a blackout. Dr. Berryhill testified that in his opinion defendant's mental functions were not so diminished that he was incapable of forming specific intent. His opinion was based on the fact that amnesia is an effect of a "major" reaction, major reactions are of long duration, and defendant testified his amnesia was of very short duration. Defendant also testified his amnesia ended abruptly, and the doctor testified this was inconsistent with a major reaction. Therefore, Dr. Berryhill concluded defendant experienced only a minor reaction. He further testified that a minor reaction does not affect the ability to form specific intent. Dr. Loeffelholz based his conclusion that defendant was capable of forming specific intent on his nearly normal motor activities, his specific goal change when he learned the victim was menstruating, instances of remote memory, and his claim of immediate change in memory ability.

There was clearly sufficient evidence to support the verdict.

IV. *Reciprocal Discovery.* Defendant argues for the first time in his reply brief that he was denied due process of law by the State's failure to notify him that Dr. Loeffelholz would testify in rebuttal. He cites *State v. Walton,* 228 N.W.2d 21, 25 (Iowa 1975), where we held that "reciprocal discovery [is required] in criminal cases . . . where the defendant raises either the defense of alibi or insanity and the State fails to make a strong showing of state interests to the contrary." Since this issue was not properly raised in the trial court, we do not consider it. *State v. Fowler,* 248 N.W.2d 511, 517 (Iowa 1976).

Defendant asks us to invoke a discretionary plain error rule and consider the merits of his contention even though the error was not preserved below. We have previously refused to recognize this principle. *See State v. Johnson,* 272 N.W.2d 480, 484 (Iowa 1978). We adhere to that position here.

We find no error under any of the issues raised.

AFFIRMED.