**IN THE COURT OF APPEALS OF IOWA**

No. 14-1857
Filed December 23, 2015

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**PAUL KENNETH HOWARD,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Mark R. Fowler, District Associate Judge.

Paul Howard appeals his convictions for assault against a health care provider, assault against another staff person, and disorderly conduct. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

Paul Howard was admitted to the emergency room of a Davenport hospital for treatment of stab wounds he sustained after being accosted by three men outside a bar. Howard did not cooperate with hospital personnel, including nurse Caryn Clinton. The State eventually charged him with crimes arising from his behaviors at the hospital. A jury found him guilty of assaulting a health care provider, assaulting another staff person, and disorderly conduct.

On appeal, Howard contends his trial attorney was ineffective in failing to (1) challenge the sufficiency of the evidence supporting the assault-on-a-health-care-provider count and (2) object to certain jury instructions. To prevail, Howard must show counsel did not perform an essential duty and prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

## I.     *Ineffective Assistance—Sufficiency of the Evidence*

"A claim of ineffective assistance of trial counsel based on the failure of counsel to raise a claim of insufficient evidence to support a conviction is a matter that normally can be decided on direct appeal." *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) (citing *State v. Scalise*, 660 N.W.2d 58, 62 (Iowa 2003)). "[I]f the record reveals substantial evidence, counsel's failure to raise the claim of error could not be prejudicial." *Id.*

The jury was instructed the State would have to prove the following elements of assault on a health care provider:

> 1. On or about the 12th day of April, 2014, the defendant did an act which was intended to cause pain or injury, result in physical contact which was insulting or offensive, or place Caryn Clinton in fear of an immediate physical contact which would have been painful, injurious, insulting, or offensive to Caryn Clinton.

2. The defendant had the apparent ability to do the act.
3. *Caryn Clinton was a health care provider*.

(Emphasis added.) In pertinent part, the jury was provided the following definition of "health care provider": "'Health care provider' means an emergency medical care provider . . . who is providing or who is attempting to provide health services as defined in Section 135.61 in a hospital." Iowa Code section 135.61(12) (2013) defines "health services" as "clinically related diagnostic, curative, or rehabilitative services."

Howard contends Clinton "was no longer providing health services because any diagnostic, curative, or rehabilitative services had ceased" at the time of the assault. A reasonable juror could have found otherwise.

A Davenport police officer testified he was called to the hospital to investigate a stabbing. He arrived to find the stabbing victim "screaming, yelling [and] cursing" at emergency room staff and "the whole emergency room in an uproar."

Nurse Clinton stated Howard became agitated when he was told his clothes and cell phone were at the branch that admitted him. He "yell[ed] profanities," "threaten[ed]" the nurses, and "attempted to strike [her] in the face." The thought going through her mind was "this is going to hurt." Clinton testified she "was scared."

A clinical assistant confirmed Howard's agitated state and his assaultive conduct. He testified Howard "started cussing" and "threatening" him, then spat at him and hit him on the side of his face, knocking his glasses off.

Although Howard testified he had scant recollection of these events, reasonable jurors could have found from the testimony of the State's witnesses that Howard was cognizant of his surroundings throughout his one-and-one-half- to two-hour stay. On this score, they could have considered "coma" testing performed every fifteen minutes, which revealed Howard was conscious and aware, even while agitated.

In sum, reasonable jurors could have found Clinton was providing health services when Howard assaulted her. Because the record contains substantial evidence to support this element, counsel's failure to challenge the sufficiency of the evidence on this ground could not be prejudicial.

## II. Ineffective Assistance—Jury Instructions

Howard argues his trial attorney was ineffective in: (1) failing to challenge the absence of a knowledge requirement in the marshalling instruction governing assault on a health care provider, (2) failing to challenge a presumption of knowledge in the instruction defining a health care provider, as well as confusing terms in the same instruction, and (3) failing to object to the marshalling instruction on disorderly conduct on the ground it specified a different alternative than the alternative with which he was charged.

We begin with the marshalling instruction governing assault on a health care provider. As Howard asserts, this instruction did not explicitly require the State to prove Howard knew Clinton was a health care provider. Knowledge is a statutory requirement. *See* Iowa Code § 708.3A(4). This omission would have been fatal to the State's case but for the fact that the State presented extensive evidence on the requirement. As noted, Clinton testified to objective

measurements of Howard's conscious state. She also recounted the specific epithet Howard hurled at her, a phrase showing an awareness of her gender. She and her colleague provided detailed descriptions of the assaults and Howard's overall demeanor in the emergency room. There was simply no question Howard knew Clinton was a health care provider when he assaulted her.

Given the overwhelming evidence supporting the knowledge requirement, the omission of this requirement from the jury instruction could only have had a negligible effect on the verdict. *See State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008); *State v. Boggs*, 741 N.W.2d 492, 509 (Iowa 2007). We conclude there is no reasonable probability the outcome would have been different had counsel objected to the omission of the knowledge requirement in the marshalling instruction. *Strickland*, 466 U.S. at 694.

We turn to the instruction defining a health care provider. The instruction contained the following presumption, drawn from the statute: "A person who commits an assault under this section against a health care provider in a hospital . . . is presumed to know that the person against whom the assault is committed is a health care provider." *See* Iowa Code § 708.3A(5)(d).

The Iowa Supreme Court exhaustively discussed presumptions and their constitutionality in *State v. Rinehart*, 283 N.W.2d 319, 321 (Iowa 1979). The court stated, "In order for a [presumption] to pass constitutional muster, it must be presented in such a manner that the jury is fully apprised of their option to reject its application." *Rinehart*, 283 N.W.2d at 322. The court found the presumption in that case constitutional. *Id.* at 323. In a subsequent opinion,

*State v. Winders*, 359 N.W.2d 417, 420 (Iowa 1984), the court concluded an instruction specifying that a presumption could be "rebutted by the Defendant" failed to pass constitutional muster because the jury could read the language as impermissibly shifting the burden of proof to the defendant.

The statutory presumption used here did not explicitly shift the burden of proof to the defendant, but it also did not inform jurors they could reject application of the presumption. While Howard cogently argues the presumption crossed a constitutional line, we find it unnecessary to decide this issue because, as discussed, the State presented overwhelming evidence that Howard knew Clinton was a health care provider. In light of this evidence, the presumption was superfluous.

Howard also challenges the "health care provider" instruction on the grounds that it included "technical" and inapplicable Code provisions and excluded the definitional language of "health services as defined in Section 135.61." Again, but for the State's evidence on what occurred at the hospital, Howard's argument might hold sway. Because the evidence overwhelmingly established that Clinton was a "health care provider" and Howard knew she was, we conclude Howard failed to establish *Strickland* prejudice.

We are left with Howard's challenge to the disorderly conduct instruction. The instruction read as follows:

> The State must prove all of the following elements of Disorderly Conduct by using abusive epithets/threatening gestures:
>     1. On or about the 12th day of April, 2014, the defendant was in a public place.
>     2. The defendant engaged in fighting or violent behavior.
>     If the State has proved both of the elements, the defendant is guilty of Disorderly Conduct by using abusive epithets/

threatening gestures. If the State has failed to prove either of the elements, the defendant is not guilty.

Howard argues counsel was ineffective in failing to object to this instruction on the ground it required proof of a different alternative of disorderly conduct than the charged alternative.

The law is clear:

If a trial information simply charges a violation of a statute in general terms without specifying the manner in which the offense was committed, the State may prevail by showing that the evidence is sufficient under any available theory. However, when a crime may be committed in different ways and the State specifies one way, the offense must be proved to have been committed in the manner charged.

*State v. Smithson*, 594 N.W.2d 1, 3 (Iowa 1999) (citation omitted).

Where there is a variance between the crime charged and the proof at trial, we will require a new trial if a substantial right of the defendant is prejudiced. A variance between the information and the proof is prejudicial if the defendant is not fairly notified of the charges against him so that he may prepare to defend.

*State v. Willet*, 305 N.W.2d 454, 457 (Iowa 1981) (citations omitted).

Howard was charged with a single alternative of disorderly conduct—"direct[ing] abusive epithets or mak[ing] any threatening gesture which the person knows or reasonably should know is likely to provoke a violent reaction by another." *See* Iowa Code § 723.4(3). The jury instruction made reference to this alternative but required the State to prove the elements of a different alternative—"[e]ngag[ing] in fighting or violent behavior in any public place or in or near any lawful assembly of persons." *Id.* § 723.4(1). To make matters even more confusing, the prosecutor referred to subsections (2) and (3), but not (1), in

reading a statement of the case to the jury. And, during closing argument, the prosecutor referred to the elements of subsection (1) exclusively.

As noted, the jury instruction required proof that Howard was in "a public place." The State presented scant if any evidence supporting this element. In fact, the contrary was true. Clinton testified that when Howard arrived he was moved "into one of our larger rooms." The room had a curtain. While the curtain was open, there is no indication members of the public could gain access. There is also no indication Howard freely moved in and out of the room. When the officer arrived, he was being held down on the bed and, when the assault took place, he was still on the bed. We conclude the "public place" requirement was not satisfied. If we were reviewing the jury instruction directly, rather than under an ineffective-assistance-of-counsel rubric, reversal would be mandated because the instruction was erroneous and the trial information furnished no notice of the State's intention to rely on subsection 1.

The hurdle Howard faces is *Strickland* prejudice. The State presented overwhelming evidence that Howard "direct[ed] abusive epithets or ma[de] a[] threatening gesture which [he knew] or reasonably should [have] know[n] [was] likely to provoke a violent reaction by another." *See* Iowa Code § 723.4(3). In light of this evidence, there is no reasonable probability the outcome would have been different had counsel objected to the clearly erroneous instruction and succeeded in having the elements of the "epithet" alternative rather than the "public place" alternative included in the instruction.

### III. *Cumulative Error*

Howard contends cumulative errors mandate reversal. *See State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012) (stating reviewing courts "should look to the cumulative effect of counsel's errors to determine whether the defendant satisfied the prejudice prong of the *Strickland* test."). Having found no *Strickland* prejudice on any of the grounds raised by Howard, we decline to find cumulative error. We affirm Howard's judgment and sentences.

**AFFIRMED.**