## IN THE COURT OF APPEALS OF IOWA

No. 15-2190
Filed December 21, 2016

**KENYATTA SWIFT HARLSTON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

Kenyatta Harlston appeals the denial of his application for postconviction relief. **AFFIRMED.**

Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**BOWER, Judge.**

Kenyatta Harlston appeals the district court decision denying his application for postconviction relief from his conviction for second-degree murder. We find there was no prejudice to Harlston with regard to either the instructions provided to the jury or the testimony Harlston refused the police entry into an apartment. Additionally, we find counsel did not breach any duty concerning the use of first-person witnesses or during jury selection. We affirm the decision of the district court denying Harlston's application for postconviction relief.

## I.  Background Facts and Proceedings

Harlston was charged with second-degree murder, in violation of Iowa Code sections 707.1 and 707.3 (2007). Early on August 25, 2007, a racially charged skirmish occurred in Dubuque, Iowa, involving Harlston, his friends, and Nic Blackburn and his friends. The specifics of the fight are disputed, including how many individuals were involved on both sides, who was the initial aggressor, and what provoked the incident. During the fight, Blackburn was fatally stabbed in the heart. Police officers responded to the scene, but many of the participants, including Harlston and his friends, had fled. Police arrived at the apartment where Harlston and his friends were located, asked Harlston if they could enter, and Harlston refused them entry. Harlston and his friends then voluntarily accompanied the officers to the police station, where he was charged with murder.

Trial began September 16, 2008, in Black Hawk County because of pretrial publicity in Dubuque. Harlston was convicted of second-degree murder on September 25. He appealed, and his conviction was affirmed. *See State v.*

*Harlston*, No. 08-1908, 2010 WL 624843 (Iowa Ct. App. Feb. 24, 2010). Harlston then filed numerous applications for postconviction relief. His fifth and final amended application was filed October 15, 2015. The application was denied, and Harlston now appeals, claiming trial counsel was ineffective for failing to advance a jury instruction on lack of motive, to call a first-person witness, to suppress evidence of Harlston's refusal to allow officers into the apartment, and to effectively challenge the striking of a potential juror.

## II. Standard of Review

Claims of ineffective assistance of counsel are reviewed de novo. *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001). "To prevail on a claim of ineffective assistance of counsel, the [defendant] must demonstrate both ineffective assistance and prejudice." *Id.* at 142. "If the claim lacks prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Id.* Both elements must be proved by a preponderance of the evidence. *Jones v. State*, 479 N.W.2d 265, 272 (Iowa 1991). Regarding prejudice "the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 669 (1984).

## III. Lack of Motive Jury Instruction

Harlston first claims trial counsel was ineffective for failing to request a jury instruction on lack of motive. A conviction for second-degree murder requires the jury to find malice aforethought. "The law allows a presumption of malice

aforethought from the use of a deadly weapon in the absence of evidence to the contrary." *State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003). However "the presumption is only permissive." *Id.* (citing *State v. Elam*, 328 N.W.2d 314, 318 (Iowa 1982)). Harlston claims the jury instructions did not clearly state this presumption was permissive and, without an instruction indicating the presumption could be overcome with a lack of motive, he was prejudiced.

Jury instruction number thirty stated "[m]alice aforethought may be inferred from the defendant's use of a dangerous weapon." Harlston essentially claims the words "presume" and "infer" may be used interchangeably. Our supreme court has held the word "presume" to be distinct from "infer." *State v. Rinehart*, 283 N.W.2d 319, 322 (Iowa 1979). Additionally, our supreme court found instead of "limiting the assessment of other evidence, [infer] invites such an assessment." *Id.* Finally, the use of "may" in the jury instruction clearly indicates the permissive nature of the inference. Because the jury instruction makes it clear the inference is permissive, we find there is no prejudice.

## IV. Use of First-Person Witnesses

Harlston next claims trial counsel was ineffective for not calling Harlston or another first-person witness to testify at the criminal trial, concerning his claim of self-defense. Under Iowa law, "[a] person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself . . . from any imminent use of unlawful force." Iowa Code § 704.3. Therefore, testimony regarding the fight, and any factors which may have given rise to a reasonable belief force was necessary to defend himself, would have been useful in Harlston's defense.

However, Harlston previously told counsel he could not remember his thought process leading up to the stabbing nor the actual stabbing. An eyewitness called by the State testified Harlston had run up to the victim, stabbed him, and ran away. Harlston would have been unable to counter this testimony effectively as he had no memory of the events leading up to the stabbing. Therefore, Harlston is unable to show prejudice with regard to not testifying.

Additionally, during the trial for the underlying offense, with Harlston present in the courtroom, counsel stated he and Harlston had discussed testifying. Counsel informed Harlston of his right to do so, but after being advised, Harlston had decided not to testify "by way of trial strategy." Harlston did not object to this statement from counsel. The district court also noted "based upon [Harlston's] testimony during the postconviction trial, perhaps [counsel's] recommendation was wise. Harlston said various things during the postconviction trial that likely wouldn't have been received well by a jury." Therefore, counsel did not breach his duty to inform and advise Harlston on his right to testify.

Antonio Dixon, Harlston, and Gregory Buchanan all ran from the fight and hid in Dixon's apartment. Buchanan was called by the State and testified Harlston said "I f***ing stabbed him, because don't no white mother***er disrespect me or call me on my name like that." The only other first-person witness was Dixon. In his brief, Harlston claims Dixon should have been called in order to show the fight created a reasonable situation in which to use force. However, during the postconviction hearing, counsel testified he made a list of pros and cons for calling Dixon as a witness and, after consultation with another

lawyer, decided it would be best not to call Dixon as a witness. This careful consideration of the benefits indicates the decision "was a strategical decision which we will not second-guess." *See State v. Kone*, 557 N.W.2d 97, 102 (Iowa Ct. App. 1996). We find no duty was breached.

## V. Failure to Exclude Evidence

Harlston also claims counsel was ineffective for failing to exclude Harlston's statements in refusing the police entry into the apartment. At trial, the State entered statements Harlston made to police, refusing them entry into Dixon's apartment. Harlston's counsel objected, but the objection was overruled. Courts should not penalize defendants for exercising a constitutional right, such as the right to be free from unreasonable searches. *See State v. Nelson*, 234 N.W.2d 368, 370 (Iowa 1975). However, the evidence may be admitted if it is "for some purpose other than to simply penalize the defendant for exercising a constitutional right." *State v. Thomas*, 766 N.W.2d 263, 270–71 (Iowa Ct. App. 2009).

In the current case, however, Harlston cannot show the entry of this testimony was prejudicial. Harlston claims the State used his refusal unfairly to demonstrate a guilty state of mind, which undermined the theory of self-defense. Even if the testimony were unfairly prejudicial, the evidence does not "undermine confidence in the outcome." *See Strickland*, 466 U.S. at 669. The State presented other, more compelling evidence, which it relied on to a greater extent to show Harlston's feelings of guilt, including testimony from Buchanan about Harlston's motivation for the stabbing and Buchanan's testimony that Harlston attempted to hide and destroy evidence. Testimony regarding Harlston's refusal

to allow the officers to enter and search the apartment, even if unfairly prejudicial, cannot create *Strickland* type prejudice in this case.

## VI. *Batson* Challenge

Finally, Harlston claims counsel was ineffective for failing to "follow through" on a *Batson* challenge during jury selection. During jury selection a juror, appearing to be Puerto Rican, was struck by the State. Striking a juror based solely on race is unconstitutional. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Harlston's counsel properly objected pursuant to *Batson*, which requires the State to articulate a race-neutral basis for the strike. The State based the strike on the potential juror's educational background, inability to "articulate much about her school," the fact she got all her news through MTV, and a general lack of interest in the process. Harlston urges us to find ineffective assistance because counsel did not continue to press the challenge after the objection. *Batson* does not require this, and counsel fulfilled their duty. We find there was no ineffective assistance of counsel.

We affirm the decision of the district court denying Harlston's application for postconviction relief.

**AFFIRMED.**